IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JONNA S.,[1]                                          No. 3:18-cv-02236-HZ

            Plaintiff,                    OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

            Defendant.


Kevin Kerr
Schneider Kerr & Robichaux
P.O. Box. 14490
Portland, Oregon 97293

        Attorney for Plaintiff

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Sarah L. Martin
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

     Attorneys for Defendant

HERNÁNDEZ, District Judge:

     Plaintiff Jonna S. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court affirms the Commissioner's decision.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on April 28, 2015, alleging an onset date of April 1, 2015. Tr. 74.[2] Plaintiff's date last insured is December 31, 2019. Tr. 36. Her application was denied initially and on reconsideration. Tr. 80–88.

     On July 21, 2017, Plaintiff appeared with counsel for a telephonic hearing before an Administrative Law Judge ("ALJ"). Tr. 31. On November 17, 2017, the ALJ found Plaintiff not disabled. Tr. 25. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on severe panic attacks, agoraphobia, severe anxiety, and difficulty driving and being in crowds. Tr. 159. At the time of her alleged onset date, she was 38

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 12.

years old. Tr. 24. She has a high school education and past relevant work experience as a legal assistant, a sales attendant, and a caregiver. Tr. 24.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets [his/her] burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 1, 2015. Tr. 18. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "A panic disorder with agoraphobia, anxiety, and depression." Tr. 18. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19. At step four, the ALJ concluded that:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She is limited to jobs with a reasoning level of 2 or less. She is limited to performing simple and routine tasks. She is limited to simple work-related decisions. She is limited to occasional contact with the public.

Tr. 20. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 24. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "industrial cleaner," "motel cleaner," and "electronics worker." Tr. 25. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 25–26.

///

///

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) rejecting Plaintiff's subjective symptom testimony; (2) rejecting the opinion of Leslie Cody, NP, and Tracey Columb, MD; (3) finding that Plaintiff's impairments did not meet or equal a listed impairment at Step 3; and (4) failing to conduct an adequate Step 5 analysis. Plaintiff also argues that—when considering a second letter from Leslie Cody, NP, submitted to the Appeals Council—substantial evidence demonstrates that Plaintiff is disabled. The Court disagrees.

///

///

I.    **Subjective Symptom Testimony**

Plaintiff argues that the ALJ erred in discounting her subjective symptom testimony. Pl.

Br. 11, ECF 13. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. In

assessing a claimant's testimony about subjective pain or the intensity of symptoms, the ALJ

engages in a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test

in which the claimant must present objective medical evidence of an underlying impairment that

could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d

1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). At the

second stage of this analysis, absent affirmative evidence of malingering, the ALJ must provide

clear and convincing reasons for discrediting the claimant's testimony regarding the severity of

the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin*, 533 F.3d 1155, 1166 (9th Cir. 2008);

*Lingenfelter*, 504 F.3d at 1036.

The ALJ must make findings that are sufficiently specific to permit the reviewing court to

conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*,

763 F.3d 1154, 1163 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir.

2015). Factors the ALJ may consider when making such determinations include the objective

medical evidence, the claimant's treatment history, the claimant's daily activities, and

inconsistencies in the testimony. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039. In

addition, conflicts between a claimant's testimony and the objective medical evidence in the

record can undermine a claimant's credibility. *Morgan v. Comm'r Soc. Sec. Admin.,* 169 F.3d

595, 600 (9th Cir. 1999).

When the ALJ's credibility findings are supported by substantial evidence in the record,

the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947,

959 (9th Cir. 2002). But a general assertion that the plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan,* 169 F.3d at 599.

Plaintiff last worked in April 2015 at a law firm "organizing files and working on billing" for ten to twelve hours a week. Tr. 40. In order travel to and spend time at the office, Plaintiff had to take medication. Tr. 39–40. Plaintiff's job ended because Plaintiff's employer "didn't want [her] to work because [she] couldn't drive anywhere." Tr. 40. For a few days in 2016, Plaintiff also did some accounting for a neighbor, but she quit after the FBI raided her employer's home. Tr. 42–43.

Plaintiff testified that she has otherwise been unable to work due to panic attacks, fear of travelling, severe depression, and side effects from her medication. Tr. 43. Plaintiff also struggles to travel over bridges and on the freeway. Tr. 39. Her routes have to be planned. Tr. 39. If she does not leave the house, she can avoid having panic attacks. Tr. 48. But she has them frequently if she does. Tr. 48. Her panic is triggered by stressful situations. Tr. 48. For example, at the hearing she testified that she had panic attacks and threw up during the week leading up to her trip downtown for the hearing. Tr. 48. She has a fear of unknown situations and experiences panic in anticipation of leaving her home. Tr. 48–49.

Since her last job, Plaintiff has stayed at home caring for her son and working around the house. Tr. 43–45. She spends her days doing odd jobs around her home, like painting, organizing, cleaning, and yard work. Tr. 43, 46. Plaintiff cares for their family dog, including occasionally walking him for 25 minutes up the street and back. Tr. 46. She also cares for her ten-year-old son, who has autism spectrum disorder. Tr. 38, 45. Plaintiff makes him breakfast,

gets him ready in the morning, and drives him to school. Tr. 45. On days when she takes a beta blocker, she cannot drive on the main road and takes the side streets, turning a 15-minute drive into a 30-minute drive. Tr. 45. Sometimes she has to pull over and take a break. Tr. 45, 48. Plaintiff usually makes her family dinner. Tr. 47. But on days when she is unable to grocery shop and adequately plan ahead, her husband cooks instead. Tr. 48. Plaintiff tesitified she does not engage in many other activities, but she can go out with her family if it is planned. Tr. 47.

The ALJ gave three reasons for discounting Plaintiff's subjective symptom testimony: (1) Plaintiff's activities of daily living; (2) Plaintiff's treatment record; and (3) lack of support from the objective medical evidence. Because two of these reasons are clear, convincing, and supported by substantial evidence in the record, the Court finds that the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

A.     Activities of Daily Living

Contradiction with a claimant's activities of daily living is a clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039. There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart,* 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001)). To impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick,* 157 F.3d at 722.

The ALJ cannot mischaracterize statements and documents in the record or take these out of context to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ found that Plaintiff's "allegations regarding the intensity, persistence, and limiting effects of her anxiety symptoms [are] inconsistent with her testimony regarding her activities and abilities." Tr. 22. In so finding, the ALJ cited Plaintiff's ability to help at her son's school, go to the store, drive, and volunteer. Tr. 22. She noted that Plaintiff was able to walk two miles five times a week and do various activities around the house. Tr. 22. The ALJ also cited Plaintiff's ability to walk her pet dog and care for her son, who has special needs. Tr. 22.

Here, the ALJ's reasoning—at least in part—is supported by substantial evidence. The ALJ erred in citing Plaintiff's ability to walk two to five miles, care for her son, and do various activities around the house because none of these activities are inconsistent with Plaintiff's alleged limitations. However, Plaintiff's testimony as to why she is unable to work is inconsistent with her ability to drive and engage in other activities outside of her home. For example, Plaintiff testified that she stopped working because her position required driving and it was "impossible for her to do that." Tr. 40. She explained that she is unable to work because of panic attacks and fear if she has to drive somewhere or take a bus to get to a destination to work. Tr. 43. Plaintiff also stated that she has panic attacks frequently if she must leave the house or in anticipation of going out. Tr. 48. However, she also testified that she can go out with family if she plans it, and she drives her son to school every day, which is a fifteen- to thirty-minute drive depending on the route. Tr. 45, 48. As late as May 2017, chart notes suggest Plaintiff could still drive and carry out other activities if pre-planned and familiar. Tr. 687 (increase in anxiety and panic attacks, worse in morning; anxiety in "afternoon is fine unless she gets stuck in traffic"; had to pull over once when son was in the car; "cannot drive on freeways and will leave 30

minutes early to allow herself time to take side streets"; "has to shop in same grocery store . . . still gets nervous and a few times she had such severe anxiety she had to leave before paying."), 690 (notes "some anxiety with driving and going somewhere in the morning" and anxious if eating somewhere new), 706 (takes lorazepam when "has go to a large enclosed place like target"), 225 (2015 chart note after plaintiff lost her job reflecting anxiety and difficulty driving over bridges and on freeways, but also notes Plaintiff is "helping out at school more and challenging herself and going to the store"). Records from the years prior to her alleged onset date, when Plaintiff was still working, suggest a similar level of functioning. Tr. 230 (2014 chart note that she started a new position and gets anxiety attacks when driving, so she avoids bridges and freeways and sometimes has to pull over to do breathing techniques and tapping), 238 (2014 chart note indicating "crazy summer" with situational stressors but "working for a new lawyer and loves it"), 248 (2013 chart note indicting increased anxiety but taking her mom to medical appointments), 715 (2012 chart note indicating Plaintiff had a lot of anxiety but "not as bad as she was in the past" and able to drive over bridges and work five days a week for five hours). Although there are reports in the record of Plaintiff's increased panic and anxiety, *see* tr. 687, 696, 712, the record as a whole supports the ALJ's conclusion that her activities of daily living—particularly as reflected in her medical records—do not support the level of functioning alleged.

B.    Course of Treatment

In assessing a claimant's credibility, the ALJ may consider the effectiveness of any medication, *see Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995) ("Factors that the adjudicator may consider when making such credibility determinations include the . . . effectiveness or adverse side effects of any pain medication[.]"), and evidence of conservative treatment, *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is

sufficient to discount a claimant's testimony regarding severity of an impairment."). However, because "[c]ycles of improvement and debilitating symptoms are a common occurrence, . . . it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Reports of improvement "must . . . be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.*

The ALJ found that Plaintiff had "little treatment for her mental health issues during the period at issue beginning April 1, 2015, other than visits for medication management" and that Plaintiff's medications were effective. Tr. 21. The ALJ also noted that Plaintiff did not have a history of psychiatric hospitalization, "other than a history of treatment for 15 hours in a hospital emergency room for psychosis following her son's birth in 2007." Tr. 21–22.

The ALJ's characterization of Plaintiff's treatment history is supported by substantial evidence. The Court is generally wary of discounting a claimant's testimony regarding limitations caused by a mental impairment due to conservative or limited treatment. *See Regennitter v. Comm'r of Soc. Sec. Admin.* 166 F.3d 1294, 1299–1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). However, in this particular case, the Court finds that this reason is clear and convincing. Plaintiff's treatment during the relevant period has largely consisted of medication management appointments with Leslie Cody, NP. Tr. 225–63, 686–845. Plaintiff has had only

seven appointments for medication management since her alleged onset date, tr. 225–29, 687–709, and the record reflects no additional therapy or treatment for her mental health conditions during this time, *see Marney v. Berryhill*, No. 3:15-CV-01759-JE, 2017 WL 4391716, at *11 (D. Or. Sept. 12, 2017), report and recommendation adopted, No. 3:15-CV-01759-JE, 2017 WL 4369480 (D. Or. Sept. 29, 2017) (finding the ALJ did not err in finding that the plaintiff's treatment for her psychiatric impairments was conservative and effective with anti-depressant and anti-anxiety medications and no mental health counseling). In her consultative psychological examination she confirmed this lack of additional therapy, explaining that she has seen psychotherapists from time to time but "since there was no progress, she discontinued psychotherapy and isn't doing anything." Tr. 268.

In addition, though Plaintiff reported consistent symptoms of anxiety from driving and leaving her house, she also told her provider that her medications were effective. For example, in September 2015, Plaintiff reported that a beta blocker worked well to control her physical response to anxiety. Tr. 706, 699 (anxiety better with propranolol), 693 (propranolol helps a lot and has not needed the lorazepam as often as a consequence), 690 (medications are helping and propranolol "helps a lot"), 225 (tried the hydroxyzine which works). Though there are moments in the record where her symptoms were exacerbated, these reports of heightened symptoms appear to be largely—though not exclusively—associated with situational stressors. *See* tr. 687 (anxiety and panic attacks since the election, and anxiety triggered by dental work). *But see* tr. 696 (noting panic attacks lately while driving, and a recent experience where she was stuck in NE Portland for five hours because she could not drive home). Accordingly, substantial evidence supports the ALJ's finding that Plaintiff's medication was effective and her treatment limited during the period in question.

C.    Objective Medical Evidence

The ALJ is instructed to consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between Plaintiff's testimony and the objective medical record is a valid reason to discount Plaintiff's testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). And in some cases, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r Soc. Sec. Admin.,* 359 F.3d 1190, 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on objective, physical basis by claimant's treating physician."); *Burch*, 400 F.3d at 681 (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). But this may not be the ALJ's sole reason for discounting a claimant's testimony: "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick,* 157 F.3d at 722.

The ALJ concluded that Plaintiff's "allegations of disabling impairments are not supported by the treatment records and the objective evidence," specifically pointing to normal mental status exams. Tr. 21–22. This conclusion is not convincing. Plaintiff's normal mental status exams at these appointments do not conflict with Plaintiff's impairments of agoraphobia, anxiety, and panic. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (noting that "observations of cognitive functioning during therapy sessions [did] not contradict [the plaintiff's] reported symptoms of depression and social anxiety"). However, because the ALJ has

provided two other clear and convincing reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony, the Court finds that the ALJ did not err in discounting Plaintiff's subjective symptom testimony.

## II.    Medical Opinion Evidence

Plaintiff argues that the ALJ erred in rejecting the medical opinion evidence from Leslie Cody, NP, co-signed by Tracey Columb, MD. Pl. Br. 8. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician, *id.*, and more weight is given to an examining physician than to a nonexamining physician, *see Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn,* 495 F.3d at 632; *Widmark*, 454 F.3d at 1066. However, the ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the parties agree that the specific and legitimate standard applies.[3] Def. Br. 3, ECF 14; Pl. Br. 9.

On July 11, 2017, Leslie Cody, NP, provided a written opinion regarding Plaintiff's impairments that is co-signed by Tracey Columb, MD. Nurse Practitioner Cody has seen

---

[3] Because Plaintiff and Commissioner both apply the "specific and legitimate" standard of review to this case, the Court declines to further discuss whether Nurse Practitioner Cody is part of a treatment team with Tracey Columb, MD.

Plaintiff since October 2007, and she began "to discuss meds for mood" in January 2009. Tr. 846. Plaintiff sees Nurse Practitioner Cody every three to five months for treatment of—among other physical ailments—bipolar II, moderate depression, chronic generalized anxiety, panic disorder, and agoraphobia. Tr. 846. Plaintiff's symptoms include paralyzing anxiety and agoraphobia, fear of crowds and new situations, and fear in cars. Tr. 847.

According to Nurse Practitioner Cody, Plaintiff suffers extreme limitations in adapting to changes, managing her symptoms, changing activities or work settings without being disruptive, and handling conflicts with others. Tr. 847–49. Plaintiff is also markedly limited in avoiding distractions while working; responding to requests, suggestions, criticism, correction, and challenges; and responding to demands. Tr 847–49. She also opined that Plaintiff could not have a job with exposure to the public or strangers or that would require leaving her house. Tr. 847. Plaintiff may function well if calm, in a familiar setting, talking to a well-known colleague. Tr. 847. If anything does not go as planned or she has to interact with new people or settings, she "shuts down." Tr. 847. Plaintiff may struggle to get places due to phobia of driving and freeways but can be timely if there is no traffic or detour for her route. Tr. 849. Nurse Practitioner Cody also opined that Plaintiff may need to leave work due to panic attacks and would need to take unscheduled breaks—the length and frequency of which depend on her commute and other triggers—causing her to miss 16 hours or more of work per month due to her impairments. Tr. 848–49.

The ALJ gave four reasons for discounting Nurse Practitioner Cody's opinion: (1) the frequency with which she sees Plaintiff; (2) Plaintiff's unremarkable mental status exams; (3) Plaintiff's activities of daily living; and (4) Plaintiff's conservative treatment. Tr. 23. As to the first two reasons, the ALJ erred. Though Nurse Practitioner Cody only sees Plaintiff every three

to five months, Plaintiff has a long treating relationship with Nurse Practitioner Cody. At the time of the hearing, Plaintiff had sought mental health treatment from her for nearly eight years. As to Plaintiff's unremarkable mental status exams, these findings do not conflict with Plaintiff's psychological impairments. *See supra* Part I(C). Accordingly, the Court finds that these were not legitimate reasons for discounting Nurse Practitioner Cody's opinion evidence.

However, the ALJ's findings that Plaintiff's conservative treatment history and activities of daily living conflict with this opinion evidence is specific, legitimate, and supported by substantial evidence in the record. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (finding inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate reason to discount that opinion); *Butler v. Colvin*, No. 2:11–cv–2802, 2013 WL 1281777, at *4 (E.D. Cal. Mar. 27, 2013) ("An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions."); *see also Bagdasaryan v. Saul*, 787 F. App'x 423, 424 (9th Cir. 2019) ("The ALJ provided specific and legitimate reasons to reject treating physician Michael Bass's opinion on Bagdasaryan's physical functioning as . . . inconsistent with the conservative treatment Dr. Bass prescribed."). As described above, Plaintiff's mental health treatment has been limited and effective in improving Plaintiff's symptoms. *See supra* Part I(B). In addition, Plaintiff's activities of daily living—which include driving her son to school, going out with her family, running errands, and other activities—conflict with the degree of limitation described by Nurse Practitioner Cody, particularly as to her inability to drive and leave her home. *See* tr. 847, 849 (noting Plaintiff is not able to hold a job requiring her to leave home and struggles to get places due to phobia of driving). Because these reasons are specific, legitimate, and supported by

substantial evidence, the Court finds the ALJ did not err in discounting Nurse Practitioner Cody's opinion.

## III.    Step 3

Plaintiff argues that the ALJ erred at Step 3 of the sequential analysis. Pl. Br. 11. If a claimant meets or medically equals a listed impairment at Step 3 of the sequential analysis, then she is presumed disabled regardless of her age, education, or work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence to establish all the requisite medical findings that her impairments meet or equal any particular listing. An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering, "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant[.]" 20 C.F.R. § 404.1526(a), (c). "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Id.*

Here, Plaintiff argues that the ALJ "failed to make sufficient factual findings in determining that [Plaintiff] does not meet or medically equal Listings 12.04 and 12.06." Pl. Br. 11. Plaintiff also argues that she meets or equals both listings because—in the opinion of Nurse Practitioner Cody and Dr. Columb—she suffers from extreme and marked limitations in some of the paragraph B criteria of the listing." *Id*. However, ALJ properly rejected the opinion evidence from Nurse Practitioner Cody and Dr. Columb, and Plaintiff cites no additional evidence from

the record in support of her argument that the ALJ "ignore[ed] substantial evidence of record supporting a finding of disabled at step three." *Id.* Accordingly, the Court finds that the ALJ did not err at Step 3 of the sequential evaluation.

## IV.    Analysis at Steps 4 and 5

Plaintiff alleges that the ALJ erred at Step 5 because she presented an incomplete hypothetical to the Vocational Expert ("VE"). Pl. Br. 15. The ALJ has the responsibility of determining a claimant's RFC. 20 C.F.R. § 416.946(c). The RFC is used at step four of the sequential analysis to determine if a claimant is able to perform past relevant work, and at step five to determine if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 416.920(a). The RFC reflects the most an individual can do. 20 C.F.R. § 416.945. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the vocational expert ("VE"). *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir. 2001). The Court should uphold step four and five determinations "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss*, 427 F.3d at 1217.

Here, Plaintiff argues that the ALJ's hypotheticals did not include all of Plaintiff's limitations and that the "more complete" hypotheticals presented to the VE with limitations similar to those reported by Plaintiff and Plaintiff's medical sources would preclude competitive employment. However, the Court has concluded that the ALJ did not err in discounting Plaintiff's subjective testimony or the opinion evidence from Plaintiff's health care providers. As Plaintiff has not identified deficiencies in the hypotheticals other than limitations from this properly rejected evidence, the Court finds that the ALJ did not err at Step 5.

///

## V.       Evidence Submitted to the Appeals Council

Plaintiff also argues that a letter submitted to the Appeals Council demonstrates that Plaintiff is disabled. Pl. Br. 15. Under the applicable regulations, "[t]he Appeals Council will review a case if . . . [it] receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."   20 C.F.R. § 404.970(b). "[W]hen a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported by substantial evidence."[4] *Brewes v. Comm'r, Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

In denying Plaintiff's request for review, the Appeals Council considered a letter from Leslie Cody, NP, dated December 1, 2017. Tr. 2. In the letter, Nurse Practitioner Cody noted that Plaintiff's medical chart did not reflect her current social history. Tr. 12. Specifically, Plaintiff's information regarding her employment, volunteering, and exercise regime had not been updated since 2006. Tr. 12. Nurse Practitioner Cody opined that Plaintiff had "extremely severe agoraphobia and anxiety, which has been debilitating and disabling for nearly 3 years." Tr. 12. The Appeals Council concluded that the letter did "not show a reasonable probability that it would change the outcome of the decision." Tr. 2.

The Court finds that this evidence does not change the Court's conclusion that the Commissioner's decision was supported by substantial evidence. As the Commissioner points

---

[4] Here, neither party disputes that the additional evidence that Plaintiff provided to the Appeals Council is part of the administrative record subject to the Court's review. Def. Br. 10; Pl. Br. 15.

out, the letter from Nurse Practitioner Cody largely echoes her earlier opinion as to Plaintiff's

limitations. Def. Br. 10 In both her letter and her earlier opinion, Nurse Practitioner Cody opines

that Plaintiff's severe agoraphobia and anxiety are debilitating. *Compare* tr. 12 *with* tr. 847.

Though Nurse Practitioner Cody's letter offers some clarity as to Plaintiff's work history,

volunteer work, and ability to go to the gym and grocery store, this does not undermine the

ALJ's conclusion that Plaintiff's testimony regarding her limitations is inconsistent with

Plaintiff's stated activities of daily living as described above. *See supra* Part I(A). For example,

even though Nurse Practitioner Cody writes in her letter that Plaintiff had not gone to the grocery

store in over a year, notes from her last appointment with Nurse Practitioner Cody on May 18,

2017, indicate otherwise. *Compare* tr. 12 *with* tr. 687 ("She has to shop in the same grocery store

at of [sic] hours and uses the same cashier if she can[.] She still gets nervous and a few times she

had such severe anxiety she had to leave before paying."). Nor does the letter undermine the

ALJ's conclusion that the medical record demonstrates Plaintiff's treatment history was limited

and effective. *See supra* Part II(B). Accordingly, even when considering this new evidence, the

ALJ's decision is still supported by substantial evidence.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.


DATED:   September 29, 2020   .


MARCO A. HERNÁNDEZ
United States District Judge